## State of Vermont v. Catherine St. Peter, et al.

[315 A.2d 254]

No. 180-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 5, 1974

*Paul D. Sheehey, Esq.,* Burlington, for John Gladding.

*John S. Liccardi,* Public Defender, Rutland, for Catherine St. Peter.

*Richard S. Kohn, Esq.,* American Civil Liberties Union of Vermont, Inc., Montpelier, *amicus curiae.*

**Barney, J.** This case presents the anomaly of civil matter within a criminal case. The real party in interest and appellant is one John Gladding, a television news reporter charged with contempt of court. The matter was referred to this Court, with the approval of the lower court, before final judgment was rendered on the determination of contempt. Therefore, whether this is taken as a certification in a civil matter under V.R.A.P. 5, or an appeal following 13 V.S.A. § 7403, it is clear that the approved appeal must be accompanied by a written certification of the issues. This concern was referred to the parties for remedy, and certification in due form accomplished.

Part of the problem is due to the parties' interest in obtaining a ruling of law on the right of a newsman to refuse to answer certain questions in a deposition proceeding based on the assertion of a privilege deriving from the First Amendment and the protection to be accorded a free press. From the point of view of the parties pressing the appeal, an answer to the question is at least as important as any concerns relating to the disposition of the actual case or controversy before us. Unfortunately, courts cannot take that approach. It is the duty of the court to resolve the dispute before it on whatever ground may properly conclude or dispose of the litigation, and not engage unnecessarily in exercises in the derivation of abstract law.

Fortunately, this case is now so oriented that some of the issues sought to be raised are validly before us. The matter arose in connection with a deposition requested by counsel for several respondents in cases begun as a result of a certain extensive drug raid on the part of law enforcement officers in Rutland County. Mr. Gladding was apparently present at state police headquarters in Rutland when the operation began. The deposition was, as far as it had developed, an attempt by the respondent to determine the source of his foreknowledge of the episode. When asked at the deposition ses-

sion about these matters, he declined to answer, claiming a privilege under the First Amendment. The matter was then referred into district court, apparently under 13 V.S.A. § 6721 (now repealed), and the questions again put. He once more refused, and the court stated for the record that he was in contempt.

Although his refusal was based on a claim of privilege, other issues were raised. He was, at the time, represented by his own counsel, who also objected that no showing of relevance, materiality, or necessity for the questions posed to his client was made. This case is unusual in that it is the respondent who is seeking information from the witness, and the state that is defending his right to confidentiality of source. It should also be a matter of record that the true issues before this Court are most helpfully discussed by an excellent brief filed *amicus curiae* on behalf of the American Civil Liberties Union of Vermont, Inc.

The latest statement of the discussions of First Amendment testimonial privilege with respect to newsgatherers is *Branzburg* v. *Hayes*, 408 U.S. 665, 33 L.Ed.2d 626, 92 S.Ct. 2646 (1972). The United States Supreme Court, in that case, held that there was no constitutional privilege under the First Amendment excusing newsmen from the obligation to appear and testify before grand juries (state or federal) and to answer questions relevant to an investigation into the commission of a crime. This duty they share with other citizens. This duty is coupled with a reference to the same duty incident to a criminal trial itself. It is also clear that, to date, we have no explicit constitutional definition requiring recognition of a newsman's privilege to withhold testimony, nor is any such privilege recognized at common law.

But the language and attitude of the *Branzburg* majority does not indicate an entire absence of concern for the newsgathering function so relevant to the full exercise of the First Amendment. The opinion confines itself to grand jury proceedings and trials. It declines to pass upon appearance of newsmen before other bodies or agencies. Even more noteworthy, the concurring opinion of Mr. Justice Powell suggests that the First Amendment supports enough of a privi-

lege in newsgatherers to require a balancing between the ingredients of freedom of the press and the obligation of citizens, when called upon, to give relevant testimony relating to criminal conduct.

Testimonial privileges have varying origins. Some, like the privilege against self-incrimination, have constitutional footing. Others derive from our common law heritage or come into being by way of statutory enactment. All have their source in strong policy considerations. All not of constitutional magnitude must yield to constitutional concerns on some point or another, and all must react according to the relative value of competing policies.

■■ An example is the privilege accorded the prosecution to withhold the name of an informer. In the name of public policy in support of law enforcement, this privilege is extended to the point, but no further, that it conflicts with the right of an accused to be confronted by the witnesses against him. Where the identity of an informer in a criminal trial is shown by the accused to be relevant to the issue of guilt or innocence, disclosure must follow. *Roviaro* v. *United States,* 353 U.S. 53, 1 L.Ed.2d 639, 77 S.Ct. 623 (1957). The interest of the enforcement officer in promoting the free flow of criminal intelligence into police hands has thus been accommodated to the constitutional rights of a defendant on trial.

■ In this case, dealing as we are with deposition proceedings under the rules of this Court, we feel an equivalent accommodation can be achieved here. The right of discovery in Vermont is of great liberality, and the law is the better for it. But it is not of constitutional dimension and has no common law equivalent. When it is confronted by policy considerations related to a constitutional privilege, a carefully considered modification in the light of both concerns is in order.

■ Mr. Justice Powell's concurrence expresses concern for the adoption of the investigative function of a free press as an arm of the prosecution. *Branzburg* v. *Hayes, supra,* 408 U.S. at 709; see also *United States* v. *Liddy,* 354 F.Supp. 208, 216 (D.D.C. 1972). That concern is heightened here by the liberal discovery rules available in this State. Personal

concerns, other than possible self-incrimination, must yield to the deposing procedures. But legitimate objections to disclosure based on First Amendment grounds require careful evaluation by the judicial officer before answers are compelled, or the sanctions of fine or imprisonment involved.

■ Therefore, we hold that, when a newsgatherer, legitimately entitled to First Amendment protection, objects to inquiries put to him in a deposition proceeding conducted in a criminal case, on the grounds of a First Amendment privilege, he is entitled to refuse to answer unless the interrogator can demonstrate to the judicial officer appealed to that there is no other adequately available source for the information and that it is relevant and material on the issue of guilt or innocence. If such a showing cannot be made to a measure consistent with the overriding of any First Amendment concern, the deponent cannot properly be compelled to answer the question.

Since our jurisdiction is limited to the issue certified to us, our disposition must be equally limited.

*With respect to the question certified as to whether the witness can be compelled to testify as to the sources of his information without violating rights protected by the First Amendment of the United States Constitution, the answer is in the affirmative, subject to the qualifications expressed in the opinion.*