# Richmond

CHARLES WILLIE BROWN v. COMMONWEALTH OF VIRGINIA.

April 22, 1974.

Record No. 730464.

Present, All the Justices.

*John Kenneth Zwerling (Alan J. Cilman,* on brief), for plaintiff in error.

*Burnett Miller, III, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

Charles Willie Brown appeals a final judgment order entered February 12, 1973 confirming a jury verdict finding him guilty of murder in the second degree and fixing his punishment at ten years in the penitentiary.

The dispositive issue before us is whether the trial court erred in refusing to require a newspaper reporter to divulge the identity of a confidential source of a published account of the crime.

On the day after the killing, the *Free Lance Star,* an afternoon newspaper, reported that William Monroe Atchison, Jr., had been shot in the head "last night" and "died this morning". Citing information supplied by "a spokesman in the Stafford County Sheriff's Department", the article stated that "Atchison and his friend [Eric Lynn

Kearns] apparently surprised two men already on the property [M & M Junkyard] and in an old truck where parts are stored. . . . The unknown men said 'Hey', in a friendly manner and then fired two shots, one of which struck Atchison. . . ."

Curtis Correll, investigating detective, Stafford County Sheriff's Department, testified that about 9:30 a.m. on the morning after the crime, he talked by telephone with a woman reporter at the *Free Lance Star*; that he did not make the statements attributed in the article to a "spokesman"; that he had talked with Kearns on the night of the killing but that "he was very emotional and couldn't make any kind of statement"; and that on the afternoon the article was published he talked again with Kearns who then named Brown as the assailant.

About 9:30 p.m. on June 28, 1972 Kearns and Atchison were walking through the automobile junkyard when they observed two men. Kearns, who was previously acquainted with Brown, testified that he recognized Brown as one of the men; that Atchison said "Hey" to Brown; that Brown fired a pistol shot between them; that he (Kearns) hollered "Charles" and Brown responded, " 'Who is it,' two or three times, and I recognized his voice"; that Brown then fired again and killed Atchison; and that he was "positive" that Brown was the man who fired the shots.

Kearns further testified that he had never made to anyone the statements as reported in the article but that "I told them [the Sheriff's Department] I seen several people around the truck where parts are stuffed, you know, stored"; and that with respect to who said "Hey", "I think the newspaper got a little mixed up there."

Attempting to ascertain the identity of the confidential source, Brown filed a motion for discovery and inspection and subpoenaed "John Doe and Richard Roe, Spokesmen for Stafford County Sheriff's Department". Failing in both attempts, he subpoenaed the author of the article, reporter Helaine Patterson. Patterson read her article to the jury and testified that it accurately reported the information furnished by her source on the morning after the crime. Asserting a First Amendment privilege, she refused to name her confidential source. The trial court ruled that a balance must be struck between freedom of the press and the right of the defendant to compel disclosure; that the case "must be substantially dependent upon what the testimony of the source might be"; and that on the facts of this case, the reporter would not be required to divulge her source.

We believe that, as a news-gathering mechanism, a newsman's privilege of confidentiality of information and identity of his source is an important catalyst to the free flow of information guaranteed by the freedom of press clause of the First Amendment. Unknown at common law, it is a *privilege* related to the First Amendment and not a First Amendment *right*, absolute, universal, and paramount to all other rights. The Supreme Court has held that the privilege must yield to the government's right to investigate and indict by grand jury. *Branzburg* v. *Hayes*, 408 U.S. 665 (1972).[1] The Sixth Amendment rights of a citizen accused of crime and his right under Article I, Section 8 of the Constitution of Virginia (1971) to "call for evidence in his favor" are rights of no less dignity than the right of the government to prosecute. Nor are society's demands that the privilege yield to the legitimate needs of law enforcement superior to the demands of due process that the privilege yield to the legitimate needs of the accused to defend himself. *See, United States* v. *Liddy*, 354 F. Supp. 208 (D.D.C. 1972).

But we think the privilege of confidentiality should yield only when the defendant's need is essential to a fair trial. Whether the need is essential to due process must be determined from the facts and circumstances in each case. We are of opinion that when there are reasonable grounds to believe that information in the possession of a newsman is material to proof of any element of a criminal offense, or to proof of the defense asserted by the defendant, or to a reduction in the classification or gradation of the offense charged, or to a mitigation of the penalty attached, the defendant's need to acquire such information is essential to a fair trial; when such information is not otherwise available, the defendant has a due process *right* to compel disclosure of such information and the identity of the source; and any *privilege* of confidentiality claimed by the newsman must, upon pain of contempt, yield to that right. *See, Vermont* v. *St. Peter*, 132 Vt. 266, 315 A.2d 254 (1974).

As Brown stated in his brief, "the theory upon which the defense proceeded was that, on the night of the shooting, Kearns in fact told Correll what had happened, and Correll passed this information along to the *Free Lance Star*." Under that theory, the only relevance identification of the "spokesman" would have had was to show that a

---

[1] By dicta, the Court indicated that the rule would apply not only in secret grand jury proceedings but also at public trial. *E.g., Branzburg* v. *Hayes, supra,* 408 U.S. at 690.

prosecution witness had made prior statements inconsistent with statements made at trial. But the record fails to show that either the statements made at trial or the prior statements were material to proof of the crime, to proof of Brown's defense, or to a reduction in the classification or penalty of the crime charged. Since the inconsistent statements were collateral and not material, the identity of the source was irrelevant.

But even so, Brown argues, the privilege of confidentiality must yield to his right to impeach the credibility of a prosecution witness. The general rule is that a defendant has the right to impeach the credibility of a prosecution witness by proving prior inconsistent statements which call into question the truth of his testimony or his powers of perception and recollection. But under the rule we adopt, when such a right collides with the newsman's privilege of confidentiality, the privilege prevails unless the inconsistent statements are material within the definition of the rule.

Since it does not appear from the record that the statements were material, the trial court did not err in upholding the reporter's claim of privilege of confidentiality and the judgment is

*Affirmed.*