325 So.2d 40 (1975)
Lucy Ware MORGAN, Appellant,
v.
STATE of Florida, Appellee.
No. 74-619.
District Court of Appeal of Florida, Second District.
December 3, 1975.
*41 William C. Ballard, of Baynard, McLeod, Lang & Ballard, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
McNULTY, Chief Judge.
Appellant, a news reporter claiming a First and Fourteenth Amendment privilege of confidentiality of news sources, was twice found guilty of contempt for refusing to answer certain questions propounded, in the first case, before a state attorney's "investigation" in Pasco County, and, in the second, for refusing to answer the same questions before a county grand jury. We reversed the first conviction in a previous appeal[1] on grounds which we will briefly discuss, infra. The present appeal is from the second order of contempt and as to this we are compelled to affirm.
Both cases have their origin in events which occurred on or about November 1, 1973. At that time there was an ongoing grand jury investigation into matters concerning the public officials of Dade City in Pasco County. On that date there appeared in the Pasco edition of the St. Petersburg Times an article entitled, "Jury Assails Dade City, Indicts No One," under the byline of appellant Lucy Ware Morgan. It is agreed by all that a reading of the article printed under the headline would leave little doubt that the source of much of the information contained therein was a leak somewhere in the grand jury itself or in the array of court personnel having access to the grand jury's activities.
The state attorney, on that same day, caused appellant to appear before him in what he advised was an "investigation" into that leak. He announced at the time that specifically he was looking into a violation of § 905.24, F.S. 1973, which concerns itself with grand jury secrecy. Having *42 been sworn to answer all questions appertaining thereto appellant nonetheless refused to divulge the source of certain of her information and claimed a First and Fourteenth Amendment privilege of confidentiality of such source. She was called before the circuit court immediately thereafter and upon her further refusal to reply to the questions aforesaid was held in contempt. She appealed that judgment of contempt and that appeal was the aforementioned first appearance of the matter before us.
We reversed the finding of contempt in that case on the narrow ground that the "investigation" then being conducted by the state attorney, and during which the appellant refused to answer the questions posed, was an unauthorized investigation and thus could not form the basis for a contemptuous act before it. Section 905.24, supra, the precise statute involved therein, provides as follows:
"Proceedings of grand jury to be kept secret.  Grand jury proceedings are secret, and a grand juror shall not disclose the nature or substance of the deliberations or vote of the grand jury."
It will be noted that there is no penalty prescribed for a violation thereof nor is a violation declared "unlawful." This being so, we reaffirmed in that first case the well-settled Florida rule that, absent a prescribed penalty or a declaration of unlawfulness, a statute proscribing certain acts is not a criminal statute; and the state attorney being empowered only to conduct investigations into violations of the criminal law, we concluded that his "investigation" was unauthorized. We never reached, in that case, the question of a constitutional privilege to confidential news sources. We do now.
The circumstances underlying the conviction of contempt in the present case find their beginning on or about November 13, 1973, while the aforesaid first appeal was pending in this court. On that date appellant was caused to appear before the grand jury itself. It was announced by the grand jury that it, too, was investigating and looking into the possible leaks to its proceedings. Appellant was granted transactional immunity from anything she might be called upon to say and again she was asked the source of her information. Again she insisted on her claimed First and Fourteenth Amendment rights to confidentiality of the source, was again caused to be brought before the circuit court and was again found to be in contempt of court. This time she was sentenced to a flat term of imprisonment in the county jail for a period of ninety days.
At the outset, we hold that, unlike the state attorney's "investigation," the grand jury was clearly well within its proper authority in investigating matters which imperiled its own integrity or its entitlement to the secrecy afforded by Ch. 905, F.S. 1973. It is irrelevant as to these matters whether the violations of secrecy or the "leak" constituted a crime or not. Furthermore, the court itself was empowered to assist the grand jury, an arm of that court, in the exercise of its proper functions. The court order to respond to the proposed questions was therefore duly entered and the judicial finding of contempt was proper upon refusal to answer unless, of course, there was a recognizable right to refuse. We hold that there was no such right in this case.
Our own Supreme Court held fairly early on in Clein v. State[2] that there was no privilege of confidentiality. It was held there that newspersons are under the same duty to testify, when properly called upon, as any other person. In the light of the more recent United States Supreme Court decision in Branzburg v. Hayes,[3] however, *43 it is probable that the ruling in Clein is no longer the law, or, at least, has been considerably diluted. As we read Branzburg, as have other courts construing it, there is to some degree a recognizable limited or conditional First Amendment privilege to confidentiality of news sources which, nonetheless, must yield when outweighed by a more compelling public interest.[4]Branzburg, as here, was concerned with a grand jury setting, and it was determined there that a valid inquiry into criminal activity was of sufficient compelling nature as to override whatever conditional privilege was vested in the press. Additionally, it has been suggested that Branzburg may also require that a determination be made that society's interest is "immediate, substantial, and subordinating"; that there be a "substantial connection" between the information desired of the witness and the interest of society in the subject matter of the investigation; "and that the means of obtaining the information is not more drastic than necessary to forward the asserted governmental interest."[5] If this be so, and we take it to be so, we nevertheless think the record clearly shows each of such criteria to have been met here, leaving only the question of whether the judicial inquiry in which the Branzburg "privilege" must yield need necessarily be concerned with criminal activity.
We therefore now explore that question, viz., whether, assuming a valid investigation into matters properly the subject of a grand jury inquiry, such matters need be of the magnitude of possible criminal violations before the "privilege" must yield. We agree with the Ninth Circuit in Farr v. Pitchess[6] and think not.
In Farr, the trial court entered an order relating to pre-trial publicity, within the purview of Sheppard v. Maxwell,[7] calculated to assure the infamous Charles Manson, charged with murder, a fair trial. A "confidential source" violated that order and divulged certain information to Farr, a news reporter, who was subsequently held in contempt for refusing on First Amendment privilege grounds to reveal the source. The Ninth Circuit, supra, ultimately upheld the conviction holding, first of all, that the Branzburg rationale may be extended to the trial setting and, secondly, that the efforts to enforce a court order entered to preserve the integrity of a murder trial, though so enforceable only by contempt process, were of sufficient compelling public interest as to outweigh a Branzburg "privilege."
Here, as in Farr, the feared violation of the grand jury's secrecy most likely did not involve anything more than contempt of court. Indeed, the only "crime" set forth in Ch. 905, supra, relates to revealing the testimony of a witness before the grand jury, and there is no contention made here that such was the nature of the leak under investigation. But we are of the view that preservation of the rule of secrecy in grand jury proceedings and preservation of the integrity of the grand jury as an arm of the judicial branch of government is of compelling public interest equal to that recognized in Farr and is equally sufficient to override a claimed First Amendment privilege of confidentiality of a news source. If a newsman's privilege against disclosure of news sources is to serve as a bar to disclosure of the names of anyone who would violate that integrity or who would frustrate the legislative mandate of grand jury secrecy, then the courts are powerless to preserve the integrity or enforce the mandate.
*44 We conclude, therefore, that the actions of appellant in this case constituted a direct challenge to the power and duty of the court to protect and render effective its own processes and to preserve the integrity of the grand jury under its charge. We conclude further that the matter is of sufficient compelling public interest as to outweigh whatever First Amendment privilege of confidentiality of news sources appellant has under the rationale of Branzburg, supra.
We consider now appellant's contention that the sentence imposed herein was "harsh and excessive." However severe, the sentence is nevertheless valid and within recognized legal limits.[8] As such, it is beyond our power to disturb it.
In view whereof, the judgment and sentence appealed from herein should be, and they are hereby, affirmed.
BOARDMAN and GRIMES, JJ., concur.
NOTES
[1] Morgan v. State (Fla.App.2d, 1975) 309 So.2d 552.
[2] (Fla. 1950), 52 So.2d 117.
[3] 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).
[4] See, e.g., Farr v. Pitchess (9th Cir.1975) 522 F.2d 464; Carey v. Hume, 160 U.S.App. D.C. 365, 492 F.2d 631 (1974); U.S. v. Liddy, 155 U.S.App.D.C. 382, 478 F.2d 586 (1972); Bursey v. United States, 466 F.2d 1059 (9th Cir.1972). In fact, the "privilege" was allowed to stand in Bursey, supra.
[5] See Liddy and Bursey, id.
[6] Note 4, supra.
[7] (1966), 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600.
[8] See Shillitani v. United States (1966) 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622; Baker v. Eisenstadt (1st Cir.1972), 456 F.2d 382; United States v. DiMauro (8th Cir.1971), 441 F.2d 428. Also cf. Colombo v. New York (1972) 405 U.S. 9, 92 S.Ct. 756, 30 L.Ed.2d 762.