**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Philip Carwin PRETZINGER,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Dean ROBERTS,
Defendant-Appellant.**

Nos. 76–1589, 76–1655.

United States Court of Appeals,
Ninth Circuit.

Sept. 17, 1976.

Robert J. Hooker (argued), of Hooker, McDonald & Morgan, Tucson, Ariz., for appellant in 76–1589.

Bob Barber, Jr. (argued), of Tucson, Ariz., for appellant in 76–1655.

John G. Hawkins, Asst. U.S. Atty. (argued), of Tucson, Ariz., for appellees.

Before CHAMBERS, CARTER and CHOY, Circuit Judges.

PER CURIAM:

In October, 1975, agents of the Drug Enforcement Administration learned that a Piper Cherokee Six, N–4001W, (the Clark plane), had been sold by a Dr. Donald E. Clark to one Sanders for $17,000 in cash. They further were informed that all of the seats had been removed from the aircraft except the pilot's and co-pilot's seats.

On October 21, 1975, Darrell Carrico, a pilot with the Border Patrol, happened to be at Paul Dickens' repair shop at Tucson International Airport when Donald Clark II, son of Dr. Clark, brought the Clark plane in for repairs. While a mechanic was working on the plane, Carrico went up to it, looked through the open doors and observed what he believed to be marijuana debris on the floor of the plane. He went into the plane and took some of the marijuana seeds. He then called the Drug Enforcement Administration (D.E.A.), which sent over two agents to investigate. One of these agents looked into the plane, saw the seeds and seized some of them. No warrant was obtained prior to either search of the plane.

On November 4, 1975, the United States Attorney applied to the United States Magistrate for an order allowing an electronic location buzzer to be placed on the Clark plane. The magistrate issued an order allowing the placement of the buzzer for a period of thirty days. On November 6, 1975, at 2:00 a. m., the beeper was placed on the airplane. At 4:00 p. m. the same day, the Clark plane took off and flew to Mexico. A D.E.A. aircraft followed it but had to abandon surveillance because of darkness. The next morning the D.E.A. plane began again to search for the Clark plane. A buzzer signal was received and the Clark plane was located and followed. Another D.E.A. plane was also called in.

The Clark plane was sighted and followed to an airstrip fifteen miles west of Buckeye, Arizona, where it was met by a green pickup truck. The agents in the planes observed bags of suspected contraband behind the truck. One of the D.E.A. planes followed the Clark plane as it left the rendezvous and the other followed the green truck. That truck met a red truck and stopped for a few minutes. The two trucks then proceeded toward the highway, entered it, and began moving toward Buckeye. The agent in the observing plane ordered the green truck stopped. The agents who stopped the green truck, driven by Pretzinger, found 800 pounds of marijuana in it. The D.E.A. plane did not continue its observation of the red truck after it entered the highway. Some seven minutes after the green truck was stopped, a sheriff's deputy stopped a red pickup truck about ten miles from where the green truck was stopped. The red truck was driven by Roberts. The deputy stopped the truck because he had been radioed that the D.E.A. wanted a red truck travelling in that direction stopped. Roberts' truck contained no contraband but he was taken back to where the agents were holding Pretzinger.

At 6:00 p. m. on the sixth, a newsman at a Phoenix television station received a phone call from an informant that a drug arrest would take place west of the city on the sixth or seventh. A reporter and camera man were sent out to Tonopah, Arizona, that night and waited until seven the next morning, at which time they began to return to Phoenix, but arrived on the scene of

the drug arrest after a radio call about the activity.

Appellants were indicted for conspiracy to import a controlled substance, conspiracy to possess a controlled substance with intent to distribute it, and possession of a controlled substance with intent to distribute it.

The appellants moved to suppress the evidence of the various searches and moved to have the court order the newsman to reveal the name of his source. The district court denied these motions but entered a finding of fact that the informant was a government agent. Appellants submitted to trial without jury on the transcripts of the suppression hearings and were found guilty on all three counts. They received concurrent sentences on the three counts.

■ As to appellant Roberts, we reverse the convictions. Even applying the standard of *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, 1942, the evidence is just too thin to support his convictions in this case.

■ Appellant Pretzinger raises several allegations of error. First, he argues that his arrest and the subsequent search of his truck were the products of an illegal search in the form of the use of the electronic location beeper attached to the Clark plane. Under the law of this circuit, however, attachment of an electronic location device to a vehicle moving about on public thoroughfares (or through the public airspace) does not infringe upon any reasonable expectation of privacy and therefore does not constitute a search. *United States v. Hufford,* (9th Cir. 1976), 539 F.2d 32. *But see United States v. Holmes,* 521 F.2d 859 (5th Cir. 1975), aff'd en banc, 537 F.2d 227 (5th Cir.). Consequently, no warrant is needed to justify installation of an electronic beeper unless fourth amendment rights necessarily would have to be violated in order to initially install the device. *See United States v. Hufford, supra.* In this case, the affidavit in support of the application for a warrant to use the buzzer is sufficient to establish probable cause for its use. Rule 41 of the Federal Rules of Criminal Procedure, although not specifically encompassing installation of electronic loca-

tors, authorized the magistrate to grant the order allowing attachment of the device to the Clark plane. The relevant and appropriate requirements of that rule were satisfied here.

■■ Pretzinger also argues that the affidavit in support of the application contains information obtained in the October 21 search of the Clark plane. He argues that this evidence was illegally obtained, and when it is excluded from the application there is insufficient evidence to support the issuing of the warrant. The simple answer to this objection is that Pretzinger lacks standing to challenge the validity of the October 21 search. He must be either: (1) present at the time of the search; (2) the owner of the premises searched; or (3) charged with possession of the evidence seized. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The search of the Clark plane was clearly not made with Pretzinger as its target. He meets none of the other criteria that would give him standing to challenge this search.

■ Pretzinger also challenges his arrest and the contemporaneous search of his vehicle on the highway after the rendezvous. There was adequate probable cause to support both the arrest and the search. Pretzinger in his truck had rendezvoused with a plane that had been down to Mexico and was known to have carried marijuana before. The agents observed the bags of suspected contraband behind the truck at the landing strip. This was adequate to establish probable cause. The search of the vehicle without a warrant is justified by the motor vehicle exception to the warrant requirement under the circumstances here.

■ Pretzinger further argues that it was prejudicial error for the trial judge to refuse to grant his motion to order the newsman to reveal his source as to the happening of the drug arrest in the desert. The district judge must balance the interest of confidentiality of news sources against the needs of the criminal justice system to know the identity of the source in determining whether or not to require disclosure. *Farr v. Pitchess,* 522 F.2d 464 (9th Cir. 1975). Here the defendant argues that the

identity of the source was important to him because if the source was a federal agent then the government knew of the potential drug arrest in advance of the activity so that a warrant should have been obtained. We note that the trial judge, while refusing to require a disclosure of the actual identity of the source, did make a factual finding that the source was a government agent. We do not draw the same conclusion as the defendant from the fact that the newsman's source was a government agent. Even with prior knowledge of a potential drug exchange somewhere north and west of Phoenix, the government could not have possessed adequate specific information about Pretzinger's truck to obtain a warrant to search it. Thus, refusal to order disclosure was not error.

We find no merit in the contention of Pretzinger that the evidence before us does not support his conviction.

The judgment of conviction of Pretzinger is affirmed and the judgment of conviction of Roberts is reversed.