STATE OF KANSAS, *Plaintiff-Appellee,* v. MILDA R. SANDSTROM, *Defendant-Appellant, IN RE* THE APPLICATION OF JOE PENNINGTON.

No. 49,660

IN THE MATTER OF THE APPLICATION OF JOE PENNINGTON FOR A WRIT OF HABEAS CORPUS, *Petitioner-Appellant,* v. F. T. (JIM) CHAFFEE, SHERIFF OF SHAWNEE COUNTY, KANSAS, *Respondent-Appellee.*

(581 P.2d 812)

Opinion filed July 21, 1978.

*Robert Hall,* of Adams, Jones, Robinson and Malone, Chartered, of Wichita, and *Carl C. Monk,* of the New York bar, argued the cause, and were on the brief for the appellant.

*Frank Yeoman,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Gene M. Olander,* district attorney, were on the brief for the appellee.

*Carl C. Monk* was on the brief of the American Civil Liberties Union of Kansas as *amicus curiae.*

*Gerrit H. Wormhoudt,* of Wichita, was on the brief of the Wichita Eagle & Beacon Publishing Co., Inc., as *amicus curiae.*

*Michael D. Gragert* and *Russell W. Davisson,* of Wichita, were on the brief of the Society of Professional Journalists, Sigma Delta Chi, as *amicus curiae.*

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from the trial court's finding that petitioner Joe Pennington, a news reporter, was in direct criminal contempt for refusing to disclose the identity of a confidential

news source. Petitioner filed a direct appeal and a petition for writ of habeas corpus in the court of appeals. The writ was denied. (*In re Pennington,* 1 Kan. App. 2d 682, 573 P.2d 1099 [1977].) Petition for review was granted by this court and upon motion the petition and direct appeal were consolidated for decision.

The issue on review is whether a news reporter has a First and Fourteenth Amendment privilege to protect the identity of a confidential news source.

This controversy arises from a murder case. On May 3, 1977, Thad Sandstrom, a nationally recognized broadcast executive, was found shot to death in his Topeka home. Shortly thereafter, his wife, Milda, was charged with first degree murder. The case came to jury trial on November 14, 1977. At the beginning of trial her defense counsel filed a motion with the trial court to compel petitioner to reveal the identity of a confidential news source. On November 16, petitioner appeared in response to a subpoena. A motion to quash the subpoena was denied.

Under questioning, petitioner revealed that he came to Topeka from Wichita after the Sandstrom murder to investigate a possible story. While in Topeka he came in contact with his confidential news source, the informant, who told petitioner he had been at a party shortly before Sandstrom's death where a state's witness in the Sandstrom murder trial had threatened to kill Sandstrom. The informant, although present at the party, had not actually heard the threat but had been told of it by someone who had heard the threat. Although petitioner testified as to the approximate date, time, and place of the gathering, he refused to divulge the identity of his informant. Petitioner was found in direct criminal contempt of court and sentenced to sixty days in jail.

The trial court ruled that in a criminal case the petitioner did not have a privilege to refuse to disclose the identity of an informant and, even if he had a limited privilege, the need for the information outweighed petitioner's privilege of confidentiality.

We believe a newsperson has a limited privilege of confidentiality of information and identity of news sources, although such does not exist by statute or common law. The United States Supreme Court recognized the privilege in *Branzburg v. Hayes,* 408 U.S. 665, 33 L.Ed.2d 626, 92 S.Ct. 2646 (1972). That decision was a review of a trilogy of cases. In *Branzburg v. Pound,* 461 S.W.2d 345 (Ky. 1970), a reporter wrote a story describing his

observation of two persons making hashish. As a condition to observing the process the two demanded confidentiality. A grand jury investigating drug traffic subpoenaed the reporter and demanded the names of the two persons. The case of *In re Pappas,* 358 Mass. 604, 266 N.E.2d 297 (1971), involved a news reporter who had witnessed civil disturbances while investigating a news story inside a Black Panthers headquarters. When summoned to appear before the grand jury he refused to divulge what he had seen while inside the headquarters, including the identity of the persons he had observed. The last case, *Caldwell v. United States,* 434 F.2d 1081 (9th Cir. 1970), arose from a grand jury investigation of numerous crimes, including threats against the President of the United States, mail fraud, and interstate travel to incite a riot. Again, the news reporter had been assigned to cover Black Panther activities and had witnessed the alleged violations.

The majority opinion in *Branzburg* was written by Mr. Justice White, who was joined by three other justices. In its holding the court recognized the importance of the free flow of information to insure the viability of the freedom of the press, but recognized that a grand jury may require a news reporter to give testimony on all relevant matters which the grand jury is investigating, just as any other citizen is required to do. In a concurring opinion, Mr. Justice Powell sought to explain the holding of the majority, stating:

". . . The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions." (p. 710.)

Courts applying *Branzburg* to criminal cases have generally concluded that the proper test for determining the existence of a reporter's privilege in a particular criminal case depends upon a balancing of the need of a defendant for a fair trial against the reporter's need for confidentiality. (*United States v. Pretzinger,* 542 F.2d 517, 520 [9th Cir. 1976]; *United States v. Liddy,* 478 F.2d 586, 587 [D.C. Cir. 1972]; *United States v. Orsini,* 424 F. Supp. 229, 232 [E.D.N.Y. 1976], aff'd 559 F.2d 1206 [2d Cir. 1977], cert. denied 434 U.S. 997, 54 L.Ed.2d 491, 98 S.Ct. 636; *United States v. Liddy,* 354 F. Supp. 208, 215 [D.C. Cir. 1972]; *Rosato v. Superior Court of Fresno County,* 51 Cal. App.

3d 190, 124 Cal. Rptr. 427 [1975], cert. denied 427 U.S. 912, 49 L.Ed.2d 1204, 96 S.Ct. 3200 [1976]; *Farr v. Superior Court, County of Los Angeles,* 22 Cal. App. 3d 60, 99 Cal. Rptr. 342 [1971], cert. denied 409 U.S. 1011, 34 L.Ed.2d 305, 93 S.Ct. 430 [1972]; *Morgan v. State,* 337 So.2d 951, 954 [Fla. 1976]; *Morgan v. State,* 325 So.2d 40, 43 [Fla. App. 1975]; *People v. Marahan,* 81 Misc. 2d 637, 368 N.Y.S.2d 685 [1975].) Whether a defendant's need for the confidential information or the identity of its source outweighs the reporter's privilege depends on the facts of each case. As a general rule, disclosure has been required only in those criminal cases where it is shown the information in possession of the news reporter is material to prove an element of the offense, to prove a defense asserted by the defendant, to reduce the classification or gradation of the offense charged, or to mitigate or lessen the sentence imposed. When the information sought has a bearing in one of these areas, the newsperson's privilege must yield to the defendant's rights to due process and a fair trial. (See, *State v. St. Peter,* 132 Vt. 266, 315 A.2d 254 [1974]; *Brown v. Commonwealth,* 214 Va. 755, 204 S.E.2d 429 [1974], cert. denied 419 U.S. 966, 42 L.Ed.2d 182, 95 S.Ct. 229.)

While courts recognize that a news reporter's privilege is more tenuous in a criminal proceeding than in a civil case, that fact in and of itself does not automatically require disclosure in a criminal case. If that were true, no privilege would exist for a news reporter summoned in a criminal case. Nor does the privilege evaporate because the defendant is charged with murder. The proper test enunciated by the *Branzburg* majority is whether the information sought is relevant to the issues before the tribunal. Mr. Justice Powell's concurring opinion and the vast majority of criminal cases since *Branzburg* dealing with this issue recognize this feature as a primary requirement, but further suggest a test of balancing the need of the defendant for the information or the identity of the news source against the privilege of the news reporter. The trial court in this case stated that if the balancing test were applied, the need for the information outweighed the news reporter's privilege of confidentiality.

In reviewing the action of the trial court, we are cognizant the procedure used was *in camera* and in the nature of discovery by the defendant. The scope of discovery is to be liberally construed so as to provide the parties with information essential to litigation

to insure defendant a fair trial; therefore, the scope of relevancy in a discovery proceeding is broader than the scope of relevancy at trial. Relevant evidence in discovery may include information which is not admissible at trial, but which appears to be reasonably calculated to lead to the discovery of admissible evidence. If the information sought meets that test then the fact the information sought is inadmissible at the trial is immaterial.

We should not disturb the ruling of the trial court unless the record clearly shows the information sought is not relevant to the defense or could not lead the defendant to information relevant to her defense. We cannot say whether knowledge of the identity of the informant would lead to information relevant to her defense. The trial court apparently felt this was a possibility and ruled against petitioner. To find the trial court abused its discretion, an appellate court must determine that no reasonable person could take the view adopted by the trial court. (*Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 [1973].) This we cannot do; therefore, we uphold the trial court in ordering petitioner to reveal the identity of the informant.

Petitioner also challenges the validity of the contempt citation. He argues the citation is invalid because the acts constituting the contempt did not take place in "open court"; thus, they do not amount to direct acts of contempt. We disagree. Although the proceedings were *in camera* and closed to the public, the acts of petitioner were reported to the public almost instantly and were as demoralizing to the authority of the court as if they had taken place in an open courtroom. Furthermore, there is no evidence in the record to indicate that the November 22, 1977, proceedings, wherein petitioner was again asked to reveal the identity of the informant, were not in "open court", although conducted in chambers. (*Morris v. State,* 2 Kan. App. 2d 34, 573 P.2d 1130 [1978].)

Finally, petitioner argues he should not be found in contempt because he relied in "good faith" on assertion of a constitutional privilege. We do not agree. The determination of the existence of a privilege is a question for the trial court to determine, not the petitioner. The court found no privilege under the facts of this case and ordered petitioner to answer the questions, knowing that failure to do so would lead to a contempt citation. Petitioner's

decision not to answer was voluntary and he knew the consequences of his refusal.

The judgment of the trial court is affirmed.

FROMME, J., dissenting. The proper test for determining the extent of a reporter's privilege of confidentiality of information and news sources in a particular criminal case depends upon a balancing of the need of a defendant for a fair trial against the reporter's need for confidentiality. This is the test adopted by the majority of this court based upon *Branzburg v. Hayes,* 408 U.S. 665, 33 L.Ed.2d 626, 92 S.Ct. 2646 (1972).

A disclosure of information and news services should be required only in those cases where it is shown the information in possession of the news reporter is material to prove some element of the defense, to reduce the gradation of the offense charged, or to mitigate the possible sentence to be imposed.

*The defense of Milda R. Sandstrom in the murder case was insanity.*

At the hearing on the motion to compel disclosure the petitioner testified as to the approximate date, time, and place of the gathering at which a state's witness had threatened to kill Thad Sandstrom. I fail to see how the name of the newsman's informant, who had not actually heard the threat but had been told of it by someone else, could possibly have any materiality in proving some element of the defense of insanity, in reducing the gradation of the offense charged, or in mitigating the possible sentence to be imposed. The information sought was not, in my opinion, material to the defense in the case and did not justify the trial court's action in refusing to recognize the limited privilege, finding the newsman in contempt of court, and sentencing him to sixty days in jail.

MILLER, J., concurring and dissenting: I concur with the majority opinion; however, I believe that the imposition of a sentence of confinement for a fixed period of time is improper. Confinement until compliance with the order of the court is, in my judgment, the appropriate disposition in such cases.