Lester HOFFMAN et al.

v.

Judy DAVENPORT–METCALF et al.

No. 2003–431–Appeal.

Supreme Court of Rhode Island.

June 21, 2004.

 

Anne L. Mishley, for Plaintiff.

Alexander G. Walsh, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## O P I N I O N

PER CURIAM.

The plaintiffs, Lester Hoffman and Anne L. Mishley (collectively, plaintiffs), appeal *pro se* from a Superior Court grant of summary judgment in favor of the defendants, Berkeley Manor d/b/a Newport Green Associates (Berkeley Manor) and Judy Davenport–Metcalf (collectively, defendants). This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After examining the briefs of the parties [1] and the record of the proceedings below, we conclude that cause has not been shown, and that the case should be decided at this time. For the reasons set forth herein, we affirm the judgment of the Superior Court.

1. The parties waived oral argument.

### Facts and Travel

The record indicates that the dispute between the parties emanated from plaintiffs' persistent quest to secure the peaceful and quiet enjoyment of their apartment, and quickly escalated into disharmonious litigation. The plaintiffs were tenants in the Berkeley Manor, or Newport Green, apartment complex in Newport. They wrote to Ms. Davenport–Metcalf, the Berkeley Manor property manager and fellow resident of the apartment building, complaining about the conduct of the new tenants in the unit above them. They were particularly upset about the volume of a stereo played by a teenage boy, and suggested that "structural anomalies" in the flooring may be exacerbating the problem. Ms. Davenport–Metcalf responded that "there is nothing I can do about the noise from upstairs," but offered to release them from their lease upon thirty days' written notice.

The plaintiffs and Ms. Davenport–Metcalf exchanged further correspondence, and their relationship soon became acrimonious. Unfortunately, however, the noise problem did not abate, causing plaintiffs to complain to the Newport police and to write a letter to the upstairs tenant herself. This latter missive engendered a response from the upstairs-tenant's lawyer threatening "to bring immediate action either for injunction and/or a suit for libel and slander."

On January 19, 2001, Ms. Davenport–Metcalf mailed a notice of noncompliance to plaintiffs, pursuant to G.L.1956 § 34–18–36, alleging that they were in breach of their rental agreement because they have "constantly eavesdropped on and harassed [their] neighbors." The statutory notice was followed by a complaint for eviction

filed by Berkeley Manor in District Court on March 2, 2001. On April 16, 2001, Berkeley Manor mailed a second notice of noncompliance to plaintiffs, alleging that they had falsified information on their rental application and, on April 24, 2001, filed a motion to amend the eviction complaint based upon the April 16 notice of noncompliance.

The case was scheduled for trial on April 30, 2001, in the District Court. Mr. Hoffman appeared that day *pro se.* According to plaintiffs, the trial judge granted the motion to amend the eviction complaint and advised Mr. Hoffman that he (Hoffman) could attempt to mediate the matter right then and there and, if unsuccessful, the amended complaint would be tried later in the day. Believing that he had little choice, Mr. Hoffman submitted to mediation, as a result of which the parties reached a resolution and stipulated to a judgment in which Berkeley Manor was awarded possession of the premises that the plaintiffs leased. In return for a promise by plaintiffs to vacate the unit by May 31, 2001, Berkeley Manor agreed to stay an execution for possession and any claim for rent for the month of May 2001. The parties also agreed to be civil to one another.

Shortly thereafter, plaintiffs retained counsel and moved to vacate the judgment. The motion was denied on May 30, 2001, and plaintiffs filed a petition for writ of certiorari in this Court, seeking to challenge the validity of the April 30, 2001 judgment. The petition was denied.

Besides the eviction action, other legal skirmishes involving the parties were joined during this period. In March 2001, Ms. Davenport–Metcalf filed a civil action

against plaintiffs, alleging libel, slander, and emotional distress. This complaint was dismissed with prejudice in November 2002 because, according to Ms. Davenport–Metcalf, she had moved to Virginia and decided that her "damages were not significant enough to warrant her returning to the State of Rhode Island in order to prosecute her slander action."

Also, in April 2001, Ms. Davenport–Metcalf lodged a complaint with the Newport Police Department, alleging that plaintiffs were making multiple, annoying telephone calls to her and taping notes to her door. She had her telephone calls traced, and alleged that on April 16, 2001, plaintiffs left six messages between 6 p.m. and 9 p.m. Subsequently, a criminal complaint was filed against each plaintiff, alleging that they had made crank telephone calls in violation of G.L.1956 § 11–35–17. These complaints were subsequently dismissed under Rule 48(a) of the District Court Rules of Criminal Procedure.[2]

In response to these various lawsuits, plaintiffs filed an action against defendants alleging retaliation, intentional infliction of emotional distress, abuse of process, and malicious prosecution. The plaintiffs allege that these causes of action arise from defendants' wrongful and retaliatory prosecution of the civil and criminal complaints filed against them. The plaintiffs were represented by counsel when they commenced this action, but counsel withdrew shortly thereafter. The defendants' answer denied plaintiffs' charges on several grounds, including that plaintiffs' claims were barred by G.L. 1956 chapter 33 of title 9, the Limits on Strategic Litigation Against Public Participation Act (the anti-SLAPP statute). The defendants also

---

**2.** Rule 48(a) of the District Court Rules of Criminal Procedure provides in part:

"*By Attorney for State.* The attorney for the state may file a dismissal of a complaint and the prosecution shall thereupon terminate."

counterclaimed for costs and attorneys' fees under § 9–33–2(d) of the anti-SLAPP statute and for abuse of process, intentional infliction of emotional distress, and harassment.

On February 4, 2003, defendants filed a motion for summary judgment claiming immunity from plaintiffs' claims as a matter of law pursuant to the anti-SLAPP statute. The defendants' motion was heard and granted by the Superior Court on June 2, 2003. A judgment[3] was entered on the following day, from which plaintiffs timely appealed.

## Discussion

■ We review *de novo* a Superior Court grant of summary judgment. *Roe v. Gelineau*, 794 A.2d 476, 481 (R.I.2002). We will affirm the judgment only if, after reviewing the evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *Id.*

On appeal, plaintiffs argue that the motion justice erred in granting summary judgment in favor of defendants because, *inter alia*, the motion justice consistently overlooked "hard evidence," failed to consider that the defamation action brought by defendant Ms. Davenport–Metcalf was dismissed with prejudice, and that Berkeley Manor's action under § 34–18–36 was retaliatory, and that the District Court judge, who presided over the stipulation proceedings, acted in collusion with Berkeley Manor's counsel during those proceedings. Finally, plaintiffs assert that Ms. Davenport–Metcalf's "false" criminal complaint filed with the Newport police destroys any immunity defendants may have had under § 9–33–2.

In granting summary judgment, the motion justice explained to plaintiffs:

"You have the right to sue, but if you sue over someone invoking governmental process, which is what you have done, then you come up against the SLAPP statute—the anti-SLAPP statute. This complaint in this case refers to the eviction action and the criminal prosecution. What they did was they tried to influence the outcome of a governmental body of the cops and courts. When you sue people for doing that, then the question is whether or not you're allowed to do that under the SLAPP statute."

We conclude, however, that the motion justice's reliance on the anti-SLAPP statute was misplaced. Nevertheless, as we hold that defendants were entitled to judgment as a matter of law, we affirm the grant of summary judgment. *See Doe v. Gelineau*, 732 A.2d 43, 45 (R.I.1999); *Jordan v. Jordan*, 586 A.2d 1080, 1085 (R.I. 1991) (Supreme Court "will uphold a correct decision notwithstanding the reasoning upon which it rests.").

Section 9–33–2 provides in part:

"(a) A party's exercise of his or her right of petition or of free speech under the United States or Rhode Island constitutions in connection with a matter of public concern shall be conditionally immune from civil claims, counterclaims, or cross-claims. Such immunity will apply as a bar to any civil claim, counterclaim, or cross-claim directed at petition or free speech as defined in subsection (e) of this section, except if the petition or free speech constitutes a sham.

"* * *

"(e) As used in this section, 'a party's exercise of its right of petition or of free speech' shall mean any written or oral

---

**3.** No interest, costs, or attorneys' fees were awarded on this judgment.

statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; or any written or oral statement made in connection with an issue of public concern."

■ Here, plaintiffs' complaint alleging retaliation, intentional infliction of emotional distress, abuse of process and malicious prosecution, is predicated upon the eviction complaint, the criminal complaints, and presumably Ms. Davenport–Metcalf's complaint for libel, slander, and emotional distress.[4] We are not convinced that these causes of action involve issues of public concern sufficient to invoke the provisions of the anti-SLAPP statute. Nor are we persuaded that these are the types of activities that the Legislature intended to protect in enacting the law, and we decline to extend the purview of the anti-SLAPP statute to encompass these private causes of action and criminal complaints.

In this case, however, the inapplicability of the anti-SLAPP statute is of little solace to plaintiffs. After carefully reviewing the record and submissions of the parties, we discern no merit to plaintiffs' complaint.

At the outset of the hearing on defendants' motion for summary judgment, the motion justice summarized plaintiffs' complaint as follows:

"Count 1 is a claim for retaliatory conduct under the Landlord Tenant Act. Count 2 is a claim in which [plaintiffs] specifically identify the criminal allegations as being the basis of the count.

Count 3 is the same thing, the criminal conduct, the criminal allegations, but it's cast as an abuse of process count. Count 4 is malicious prosecution.

"So this is not a complaint for harassment, emotional distress or anything like that. This is a complaint for bringing an eviction action as retaliatory and for abusing the criminal process."

The motion justice also correctly set forth the framework for her analysis under the anti-SLAPP statute. Immunity under § 9–33–2(a) will not apply if the petition or free speech constitutes a sham. A statement constitutes a sham only if it is both:

"(1) Objectively baseless in the sense that no reasonable person exercising the right of speech or petition could realistically expect success in procuring the government action, result, or outcome, and

"(2) Subjectively baseless in the sense that it is actually an attempt to use the governmental process itself for its own direct effects. Use of outcome or result of the governmental process shall not constitute use of the governmental process itself for its own direct effects." *Id.*

■ Count 1 of plaintiffs' complaint alleges that "defendants have taken actions against plaintiffs in retaliation for the plaintiffs' exercise of their lawful rights seeking to enforce the terms and conditions of their lease and their occupancy, in violation of § 34–18–46." Not only did plaintiffs fail to raise retaliatory conduct as a defense to the eviction complaint, as is expressly permitted under the landlord and tenant act,[5] but also they resolved the

---

4. In their complaint, plaintiffs specify only the eviction and criminal complaints.

5. General Laws 1956 § 34–18–46(b) of the Residential Landlord and Tenant Act provides in pertinent part:

"If the landlord acts in violation of subsection (a), the tenant is entitled to the

eviction complaint by means of a stipulation. Although it is true that they subsequently attempted to vacate the judgment by arguing that Mr. Hoffman, as a *pro se* litigant, was coerced into participating in the mediation without fully understanding his rights, their motion to vacate was denied. Moreover, their effort to have this Court review the District Court judgment by means of a petition for writ of certiorari was unsuccessful.

The Residential Landlord and Tenant Act was carefully crafted by the Legislature in an effort to balance the often-divergent interests of landlords and tenants. The record in this case clearly indicates that plaintiffs had annoyed, justifiably or not, at least one other tenant in their building to the point where legal action had been threatened. Berkeley Manor gave appropriate notice to plaintiffs of the alleged lease violations and ultimately filed suit in an effort to vindicate its rights under its contract with plaintiffs— an effort that proved to be successful. The plaintiffs simply have no claim that the successful prosecution of the eviction complaint creates any liability for damages. At the summary judgment motion hearing, the motion justice addressed the following remark to plaintiffs: "What I am trying to tell you is that looking at all of these papers, they tend to support the notion that the defendants did think they had enough ground to evict you." We agree.

■ The plaintiffs, however, go further than arguing that the eviction complaint was merely retaliatory. Without a scintilla of evidence, they suggest in their written submissions, as they did at the summary judgment hearing, that defendants' counsel and the District Court judge were engaged in "collusive and unconstitutional activities." Although they say that "evidence of these activities is pervasive and substantial," they have failed to present any affidavit made upon personal knowledge, or indeed even "set forth [any] facts as would be admissible in evidence" as is required by Rule 56(e) of the Superior Court Rules of Civil Procedure. Parties opposing summary judgment may not "rely upon mere allegations" but "have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." *Mills v. Toselli*, 819 A.2d 202, 205 (R.I. 2003) (per curiam) (quoting *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I.1998)).

■ The plaintiffs have advanced three theories to support their claim for damages: intentional infliction of emotional harm, abuse of process and malicious prosecution. "To prevail on a claim for intentional infliction of emotional distress, a plaintiff must show 'extreme and outrageous conduct on the part of the defendant.'" *Jalowy v. Friendly Home, Inc.*, 818 A.2d 698, 707 (R.I.2003) (quoting *DiBattista v. State*, 808 A.2d 1081, 1088 (R.I. 2002)). "[A] plaintiff must [also] prove physical symptomatology resulting from the alleged improper conduct." *Vallinoto v. DiSandro*, 688 A.2d 830, 838 (R.I.1997) (citing *Reilly v. United States*, 547 A.2d 894, 898 (R.I.1988)). With respect to the necessary conduct required to be proven, we have adopted the very high standard set forth in the Restatement (Second) *Torts* § 46 (1965):

> "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been charac-

remedies provided in § 34–18–34 and has a defense in any retaliatory action against

him or her for possession."

terized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'." *Jalowy,* 818 A.2d at 707 (quoting *Swerdlick v. Koch,* 721 A.2d 849, 863 (R.I.1998) and Restatement (Second) *Torts,* § 46 cmt. *d* at 73).

■ The only conduct of defendants that plaintiffs allege in their complaint constitutes an intentional infliction of emotional harm is the filing of "false and malicious allegations of criminal conduct." Clearly, plaintiffs have not alleged, much less set forth, specific facts that even approach the type of extreme and outrageous conduct contemplated by the Restatement. Nor have they alleged any physical manifestation of their alleged injuries.

■■ Abuse of process " 'arises when a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed.' " *Butera v. Boucher,* 798 A.2d 340, 353 (R.I.2002) (quoting *Clyne v. Doyle,* 740 A.2d 781, 783 (R.I.1999) (per curiam)). The elements that must be proven are: "(1) the defendant instituted proceedings or process against the plaintiff and (2) the defendant used these proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." *Butera,* 798 A.2d at 353. When viewed in this light, it is apparent that plaintiffs' cause of action necessarily fails.

■ Here, the record indicates that the judicial process that culminated in the criminal complaints was "set in motion," as it were, when Ms. Davenport–Metcalf contacted the police to complain of annoying telephone calls and other alleged harassing conduct. She was advised to place a trace on her telephone, which she did. Then, armed with documentation that repeated calls had originated from plaintiffs' telephone, she lodged a formal complaint and witness statement. The police investigated; they listened to thirteen messages on Ms. Davenport–Metcalf's answering machine, and interviewed plaintiffs. As a result, the police department, not Ms. Davenport–Metcalf, filed criminal complaints.

Any individual has the right, perhaps even the responsibility, to report to the police conduct that he or she in good faith believes to be illegal, particularly if he or she is the victim of such conduct. Rather than showing a nefarious or otherwise ulterior purpose, the record suggests that the police investigated the complaint in a responsible manner, spoke to the parties, reviewed the evidence and made an independent decision to prosecute. Moreover, the "process" achieved at least one purpose for which it was designed. Ms. Davenport–Metcalf contacted the police presumably to stop the alleged harassment, and no-contact orders were, in fact, issued when plaintiffs were arraigned. The fact that the complaints were subsequently dismissed, even if, as plaintiffs suggest, the judge found there was insufficient evidence, does not lead inexorably to the conclusion that Ms. Davenport–Metcalf initiated the proceeding maliciously or to gain an advantage " 'not properly involved in the proceeding itself.' " *Butera,* 798 A.2d at 354 (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 121 at 897 (5th ed. 1984)). Indeed, the motion justice found that Ms. Davenport–Metcalf

had sufficient grounds to contact the police. In responding to plaintiffs' argument that defendants had no basis for initiating any of the actions against them, she said "[t]he problem is, all the exhibits tend to show that she did have a reason to bring an eviction action and to press charges."

■■■ "Malicious prosecution is defined as 'a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein.'" *Toste Farm Corp. v. Hadbury, Inc.,* 798 A.2d 901, 907 (R.I.2002) (quoting *Kingstown Mobile Home Park v. Strashnick,* 774 A.2d 847, 858 (R.I.2001)). "Furthermore, 'an action for malicious prosecution based on a prior civil suit may be maintained only where it is established that the prior suit resulted in a special injury to the defendant in that suit.'" *Id.* (quoting *Ring v. Ring,* 102 R.I. 112, 114–15, 228 A.2d 582, 584 (1967)).

Setting aside the fact that plaintiffs have failed to allege any special injury, they also have failed to set forth any specific facts upon which relief could be granted for malicious prosecution. As previously discussed, plaintiffs have not shown that the criminal complaints were initiated either maliciously or without probable cause. Moreover, the eviction action terminated successfully for Berkeley Manor, and thus cannot serve as the predicate for a malicious prosecution action.

■■■ Nor can Ms. Davenport–Metcalf's libel and slander suit support such an action. In her complaint, Ms. Davenport–Metcalf alleged that plaintiffs "maliciously composed and caused to be published * * * certain false, malicious and defamatory letters" and that they mailed them to various individuals who then read them. In count 2, she alleged that plaintiffs "repeatedly made false and malicious statements" about her to third parties. Finally, she alleged that she has suffered emotional distress as a direct result of plaintiffs' intentional or negligent actions.

Our *de novo* review of the record reveals that on January 23, 2001, plaintiffs wrote a letter to defendants' attorney in which they suggest that Ms. Davenport–Metcalf acted "in direct opposition to Rhode Island State Law and [plaintiffs'] rights under the Constitution," and that she had improperly allowed a realtor to influence her. The letter indicates that copies were distributed to Officer Shea of the Newport Police Department, the upstairs tenant, her son and her attorney. In their answer to Ms. Davenport–Metcalf's libel complaint, plaintiffs do not deny distributing copies of the letter. Rather, they deny that the letter is libelous and state that they "cannot control who, other than involved recipients, was allowed to read the documentation which states both fact and opinion as perceived by the [plaintiffs]." As is characterized by the entire relationship between these parties, the libel and slander suit may well have been an overreaction to plaintiffs' letter; however, plaintiffs have failed to set forth sufficient facts tending to show that it was "'instituted maliciously and without probable cause.'" *See Toste Farm Corp.,* 798 A.2d at 907.

Finally, we address the motion justice's ruling that plaintiffs' claims are barred by the anti-SLAPP statute. We affirm the motion justice's grant of summary judgment, but we conclude that the anti-SLAPP statute need not have been invoked in this case. The underlying defamation and eviction actions, as well as the criminal complaints defendants brought, are not "issues of public concern" that the statute was enacted to protect. Chapter 33 of title 9 was enacted to protect citizens, "who have participated in matters of public concern" and are the subject of lawsuits

"brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Section 9–33–1. The Legislature enacted this protection to ensure "full participation by persons and organizations and robust discussion of issues of *public concern* before the legislative, judicial, and administrative bodies." *Id.* (Emphasis added.)

We recognize that both the United States and Rhode Island Constitutions protect an individual's right of access to the courts. However, the causes of action in this appeal do not implicate either Berkeley Manor's or Ms. Davenport–Metcalf's "right of petition or free speech" that the anti-SLAPP statute was designed to safeguard. Clearly the lawsuits that are the subject of plaintiffs' complaint do not involve the type of "issues of public concern" previously addressed by this Court in the context of the anti-SLAPP statute. *See, e.g., Global Waste Recycling, Inc. v. Mallette,* 762 A.2d 1208, 1211, 1214 (R.I.2000) (making loud and public complaints to newspaper reporters concerning pollution from fire at neighboring recycling facility that had been the subject of Department of Environmental Management proceedings was protected petitioning activity on issue of public concern); *Hometown Properties, Inc. v. Fleming,* 680 A.2d 56, 58, 64 (R.I.1996) (defendant's statements made to state and federal officials in connection with potential environmental contamination resulting from plaintiff's activities were protected activity in connection with an "issue of public concern"); *Cove Road Development v. Western Cranston Industrial Park Associates,* 674 A.2d 1234, 1239 (R.I.1996) (defendant's appeal of zoning amendment allowing development of high-density residential housing adjacent to an industrial park was a protected activity worthy of immunity under § 9–33–2). Moreover, the criminal complaint did not involve a matter of public concern that would implicate defendants' First Amendment rights or rights of redress. The anti-SLAPP statute simply does not apply in this case.

## Conclusion

In reviewing the record in the light most favorable to the plaintiffs, it would appear that the plaintiffs were driven to undertake extraordinary measures simply to secure the quiet enjoyment of their apartment and a peaceful night's sleep. No tenant should have to endure the type of behavior they have alleged. The record also reveals, however, that in attempting to rectify this unfortunate situation, the plaintiffs, in effect, disturbed the serenity of their landlord and neighbors. This is borne out by the eviction complaint, which resulted in a final judgment requiring the plaintiffs to vacate the premises, and the fact that the Newport police deemed their conduct to constitute sufficient probable cause to file criminal charges against them. The plaintiffs allege that they were coerced into mediating the eviction action, yet they failed properly to appeal from the judgment, and the criminal charges were dismissed. Although it may be unclear what responsibility, if any, each party should bear for these discordant events, it is clear that the plaintiffs have failed to show a factual predicate for their complaint against their landlord, Berkeley Manor, and its property manager, Ms. Davenport–Metcalf.

Because we discern no merit to the plaintiffs' complaint, we affirm the judgment of the Superior Court, to which we return the papers of the case.

FLANDERS, J., concurring.

I concur in the decision of the Court to affirm the judgment of the Superior Court. But I would do so without reaching the

question of whether the anti-SLAPP statute bars the causes of action stated in this complaint. It is well settled that courts should decide cases "on the narrowest legal grounds available." *Shamloo v. Mississippi State Board of Trustees of Institutions of Higher Learning,* 620 F.2d 516, 524 (5th Cir.1980); *United States v. Rias,* 524 F.2d 118, 120 n. 2 (5th Cir.1975). "It is the duty of the court to resolve the dispute before it on whatever ground may properly conclude or dispose of the litigation, and not engage unnecessarily in exercises in the derivation of abstract law." *State v. St. Peter,* 132 Vt. 266, 315 A.2d 254, 255 (1974).

Generally, "court[s] should refrain from [expressing] dicta." *State ex rel. Smith v. Carey,* 112 A.2d 26, 28 (Del.1955). "[W]hen the Court goes beyond what is necessary to decide the case before it, it can only encourage the perception that it is pursuing its own notions of wise social policy, rather than adhering to its judicial role." *United States v. Leon,* 468 U.S. 897, 963, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (Stevens, J., concurring).

For the reasons stated in the Court's opinion, the claims at issue in this case are deficient in other respects, making it unnecessary for us to decide that the anti-SLAPP statute does not bar these claims because, as the majority concludes, the defendants' challenged actions did not raise genuine issues of public concern. When the plaintiffs failed to show a sufficient factual and legal predicate for their complaint against their landlord and property manager, the Superior Court properly dismissed the complaint on summary judgment. In this context, the majority's narrow construction of the anti-SLAPP statute's scope is *obiter dictum.* Thus, because we have no need to decide whether the anti-SLAPP statute bars these claims, I would refrain from passing on that potentially delicate and more difficult question.