In re APRIL 7, 1999 GRAND JURY PROCEEDINGS.

[Cite as *In re April 7, 1999 Grand Jury Proceedings* (2000), 140 Ohio App.3d 755.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 99 BA 25.

Decided Dec. 12, 2000.

*Daniel G. Padden,* Special Prosecuting Attorney, for appellee.

*Roetzel & Andress, Ronald S. Kopp* and *Amie L. Bruggeman,* for appellant.

WAITE, Judge.

This timely appeal arises from the judgment of the Belmont County Court of Common Pleas, finding appellant, a newspaper reporter, in contempt of court. The contempt arose when appellant refused to reveal the date on which he received confidential information pertaining to the Belmont County Department of Human Services, information that was ultimately published in the Akron Beacon Journal. For all of the following reasons, the trial court's ruling is reversed.

On November 1, 1998, the Akron Beacon Journal published an article authored by Jon Craig ("appellant") that utilized confidential documents pertaining to the Belmont County Department of Human Services. On March 24, 1999, the state of Ohio ("appellee"), acting through its special prosecutor, issued a subpoena *duces tecum* ordering appellant to appear before the April 7, 1999 grand jury. On the day prior to his scheduled appearance, appellant filed a motion to quash the subpoena, arguing that Ohio's shield statute, R.C. 2739.12, afforded him protection from forced disclosure of confidential sources utilized by appellant in preparing the article in question.

While the record is not entirely clear on the matter, it appears that the parties reached an agreement prior to the grand jury hearing whereby appellant would not be required to specifically identify his confidential informant. At the hearing, appellant complied with the terms of the subpoena *duces tecum* and produced the documents in question. Appellant, however, steadfastly refused to disclose the date on which he received the documents and argued that such a disclosure would lead to the identity of his informant. As a result of his refusal to answer this question, the trial court found appellant in contempt of court and sentenced appellant to incarceration in the county jail until such time as he agreed to identify the date on which he received the confidential documents. Execution of the sentence was suspended pending appeal.

In his brief to this court, appellant raises the following assignments of error:

"I. The trial court erred by ordering appellant to answer a question before the grand jury that would have disclosed information about his confidential source which is protected by Ohio's shield statute, R.C. 2739.12.

"II. The trial court erred by ordering appellant to reveal identifying information about a confidential source in violation of the First Amendment freedom of press.

"III. The trial court erred by not granting appellant's motion to quash the grand jury subpoena insofar as it required disclosure of information about a confidential source and was harassing."

As all three assignments of error pertain to the propriety of the trial court's interpretation and application of R.C. 2739.12, they shall be addressed together.

The relatively narrow issue presented in this appeal appears to be one of first impression. That is, we must determine the scope and breadth of Ohio's shield statute as it applies to attempts by the government to ascertain the identity of a newsperson's confidential source of information to further a criminal investigation. That statutory section, R.C. 2739.12, provides:

"No person engaged in the work of, or connected with, or employed by any newspaper or any press association for the purpose of gathering, procuring,

compiling, editing, disseminating, or publishing news shall be required to disclose the source of any information procured or obtained by such person in the course of his employment, in any legal proceeding, trial, or investigation before any court, grand jury, petit jury, or any officer thereof, before the presiding officer of any tribunal, or his agent, or before any commission, department, division, or bureau of this state, or before any county or municipal body, officer or committee thereof."

To fully appreciate the subtleties and nuances of the issue presently before this court, it is necessary to place the grand jury's investigation in context. On November 1, 1998, appellant authored an article regarding the Belmont County Department of Human Services. The article indicated that several investigations were being conducted by state and federal authorities regarding allegations of improper Medicaid payments to several individuals. One relevant passage in the article in question states:

"*According to county sources and human services records,* one such case being investigated involves the transfer of assets to three children of Alphonse Strussion, the 82–year–old grandfather of insurance-industry lobbyist Thomas Strussion." (Emphasis added.)

As a result of the publication of this article, a special prosecutor was appointed by the Belmont County Court of Common Pleas to investigate possible violations of R.C. 5101.27(A), which provides:

"Except as permitted by this section, * * * no person or government entity shall solicit, disclose, receive, use, or knowingly permit, or participate in the use of any information regarding a public assistance recipient for any purpose not directly connected with the administration of a public assistance program."

Thus, disclosing the records to the reporter may be, itself, a criminal act perpetrated by this unknown source.

It is important to note that the scope of the special prosecutor's investigation was *not* to inquire into the merits of the allegations raised in the article, but, rather, to investigate and to determine the identity of appellant's source of information within the Belmont County Department of Human Services. Appellant's source was the grand jury's target. Thus, it is the conflict between the special prosecutor's specific goal of identifying the source of appellant's confidential information and appellant's statutory protection from compelled disclosure of that very source that forms the backdrop for the legal arguments before us.

The transcript of the grand jury proceedings reveals the following relevant dialogue that resulted in the trial court's finding appellant in contempt of court:

"Q: [By special prosecutor] Then the last question I have for you is: Can you tell the grand jurors the date upon which you received the three sets of documents that we referred here [*sic*] today?

"A: I would not like to give the date, and that's partly because I think it would reveal my confidential source."

As a result, the parties appeared before the trial court for a resolution to the impasse. The record reflects that appellee proffered two reasons to the trial court as to why appellant should be compelled to answer the question at issue. First, it was asserted that the underlying crime, disclosure of confidential information, is a misdemeanor with a two-year statute of limitations and that a specific date was required in order to determine if prosecution for the disclosure would be time-barred. Second, it was suggested that the date was needed in order to satisfy the specificity requirement for a bill of particulars.

Appellant, however, offered to stipulate that his receipt of the records was within the applicable statute of limitations and argued that disclosure of the date he received the information would "narrow the universe" of individuals who could have provided the information to appellant. In addition, appellant represented to the trial court that appellee had admitted that the requested information "would be helpful in that situation."

At the conclusion of the hearing, the trial court, citing *In re McAuley* (1979), 63 Ohio App.2d 5, 17 O.O.3d 222, 408 N.E.2d 697, stated:

"The court must determine [whether] relevant evidence exists as to the guilt or innocence of any defendant; and whether this witness, the reporter, must then provide such relevant evidence. I have performed the balancing test and I make the following findings: (1) Evidence of date of receipt of records is relevant and material to establishing when the crime of disclosure was committed. (2) Answering the question as to the date received by this witness, Mr. Craig, does not identify his source. (3) The Court finds that it does not necessarily narrow the focus as to the source."

After thoughtful consideration and analysis, we are compelled to conclude that the trial court misapplied the holding in *McAuley* and erred as a matter of law in holding appellant in contempt of court for refusing to divulge the date on which appellant received the confidential information in the form of the records of Belmont County Department of Human Services.

As a preliminary matter, *McAuley* is not directly on point to the issue raised in the case at bar. In *McAuley*, the conflict pertained to a reporter who claimed to have a First Amendment right not to reveal the source of his confidential information and a *named defendant* who claimed that his Sixth Amendment right to a fair trial depended upon the disclosure of that information. Citing Justice

Powell's separate concurring opinion in the seminal case of *Branzburg v. Hayes* (1972), 408 U.S. 665, 710, 92 S.Ct. 2646, 2671, 33 L.Ed.2d 626, 656–657, the *McAuley* court held:

"Before a defendant in a criminal proceeding is entitled to either a newsperson's confidential information or his confidential source, the defendant must first demonstrate to the court that either the newsperson or the confidential source has relevant evidence regarding the defendant's guilt or innocence. The defendant must show that he has exhausted all available means of obtaining the confidential information requested of the newsperson. Further, the defendant must make an effort to examine the newsperson concerning his nonconfidential information and must request an *in camera* inspection by the court of the newsperson's confidential information." *Id.* at paragraph three of syllabus.

The balancing test announced in *Branzburg*, and adopted by *McAuley*, makes clear that parties may not conduct "a fishing expedition in every criminal case where there has been investigative reporting, nor as permission for an indiscriminate rummaging through a newspaper's file." *McAuley, supra*, at 21, 17 O.O.3d at 232, 408 N.E.2d at 709, citing *In re Farber and the New York Times Co.* (1978), 24 Crim.L.Rptr. (BNA) 2051, certiorari denied (1978), 47 U.S.L.W. 3369. This proscription, however, is tempered by the fact that R.C. 2739.12 shields only newspersons from forced disclosure of the *identity* of the source of information. *State v. Geis* (1981), 2 Ohio App.3d 258, 2 OBR 286, 441 N.E.2d 803; see, also, *Wheat v. Wright* (Oct. 10, 1985), Montgomery App. No. 8614, unreported, 1985 WL 17381 (allowing newsperson to refuse to answer questions whose answers, "may have necessarily made the identity of the source [of confidential information] more probable").

The matter is further complicated by dicta found within *State ex rel. Natl. Broadcasting Co. v. Lake Cty. Court of Common Pleas* (1990), 52 Ohio St.3d 104, 556 N.E.2d 1120. While the *NBC* case is not at all itself analogous, the court does discuss the so-called reporter's privilege and notes that several courts, including the *McAuley* court, have found that a balancing test should be used in such cases. However, the Supreme Court also notes that this balancing test, most often associated with *Branzburg*, really does not come from the majority opinion. Rather, the three-part test utilized by the other courts comes from a blending of the dissent and a concurring opinion in that case. Thus, the *NBC* court reasoned that the real holding of *Branzburg* is that so long as a subpoena has not been issued only for harassment purposes, a court may enforce the subpoena over a reporter's claim of privilege. *Id.* at 111, 556 N.E.2d at 1127–1128. The court goes on in its analysis, however, to state that if the subpoena is ultimately "overbroad," the adequate remedy at law is a motion to quash. By implication, the subpoena would be overbroad and violative of the statute if it

threatens the disclosure of confidential sources. *Id.* at 111, 556 N.E.2d at 1127–1128.

Our search for other analogous law has proven equally frustrating. The court in *In re Grand Jury Witness Subpoena of Abraham* (1993), 92 Ohio App.3d 186, 634 N.E.2d 667, was faced with a situation where the reporter refused to answer *any* questions put to her when subpoenaed to the Trumbull County Grand Jury. The court noted that she was requested to testify only about nonconfidential, non-source material that had already been published. The reporter had interviewed the grand jury's target, James Fiorenzo, and included his statements in her published article. Despite this, she refused to answer questions about her interview.

The court of appeals, in reviewing the matter, cited *NBC* dicta in holding that the state does not have to meet the three-prong *Branzburg* test. The court also noted that the United States Sixth Circuit Court of Appeals has held that there is no First Amendment privilege to withhold information sought by the grand jury, but this holding applies only where "the court is not presented with the issue of whether there has been a promise of confidentiality as to the identity of the source." *Abraham* at 189, 634 N.E.2d at 669, citing *In re Grand Jury Proceedings* (C.A.6, 1987), 810 F.2d 580. Because the Trumbull County Grand Jury did not seek information protected by confidentiality, the court reasoned that the only determination which needed to be made was that " 'the subpoena has been requested or issued for a legitimate purpose, rather than for harassment.' " *Abraham,* at 189, 634 N.E.2d at 669, quoting *NBC, supra,* at 111, 556 N.E.2d at 1127.

Like the *Abraham* case, there is no question in the matter before us that the source of the information is the target of the grand jury proceedings. Unlike *Abraham,* there is no question that the information sought to be protected is the confidential source. Also unlike *Abraham,* appellant was completely cooperative with his summons before the grand jury in all but one single respect: he refuses to answer a question he believes will ultimately lead to the name of this confidential source.

Justice Powell, who filed a concurring opinion in *Branzburg,* was the fifth vote for the majority opinion. Many courts, when rejecting the so-called three-part test of *Branzburg,* recognize that Powell, J., like other members of the court, found at least some sort of balancing test to be necessary. Powell, J., espoused an appropriate "balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions." *Branzburg, supra,* at 710, 92 S.Ct. at 2671, 33 L.Ed.2d at 656 (Powell, J., concurring). A

balancing of these competing interests is necessary as reporters do not possess an absolute First Amendment right or an absolute statutory right to withhold or otherwise conceal the identity of confidential sources of information in light of ongoing criminal proceedings. *McAuley, supra,* at paragraph two of syllabus.

■ Based on the record before this court, we find that an appropriate balance between these competing interests was not achieved by the trial court below. Indeed, the government is unable to satisfy the *Abraham* requirement to show that the requested information is relevant and material to the investigation into leaks of confidential information from the Belmont County Department of Human Services. Unless the government can satisfy this threshold showing, it will be unable to prove that the question as to the date on which the information was received by appellant was not made solely for the purpose of harassment, *Abraham, supra,* at 189, 634 N.E.2d at 669–670.

In the proceedings below as well as in its brief to this court, appellee set forth two separate reasons why the state was entitled to the information sought. It was alleged that the date appellant received the information was necessary to comply with the two-year statute of limitations within which the state had to bring charges. Second, it was asserted that a precise date was required in order to comply with the specificity requirement of a bill of particulars. Throughout the proceedings below as well as in its arguments to this court, appellee maintains that it was not, and is not, seeking the identity of appellant's source of information.

It must again be noted that the identity of appellant's source of information is the *precise* reason a special prosecutor was appointed: to determine the source of the leak of confidential Belmont County records. Therefore, this court is unimpressed with appellee's assertions to the contrary. As to appellee's statute-of-limitations argument, the record indicates that appellant was willing to stipulate to a possible range of dates within which he received the information for purposes of compliance with the statute of limitations. Moreover, appellant went as far as to represent to the court that the information was received within the two-year statutory period.

With respect to the argument concerning the specificity required for a bill of particulars, this court notes that Crim.R. 7(E), which provides for a request for a bill of particulars, states:

"(E) Bill of particulars. When the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge[d] and of the

conduct of the defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires."

The limited purpose of a bill of particulars is to elucidate or particularize the conduct of the accused alleged to constitute the offense. *State v. Sellards* (1985), 17 Ohio St.3d 169, 171, 17 OBR 410, 411–412, 478 N.E.2d 781, 784. In determining the sufficiency of a bill of particulars, the court must consider two questions: whether the state possesses the requested information, and whether the information is material to the defendant's ability to prepare and present a defense. *State v. Lawrinson* (1990), 49 Ohio St.3d 238, 239, 551 N.E.2d 1261, 1262–1263. A request for the bill is not to serve as a substitute for discovery. *Id.*

The record on appeal indicates that as of April 7, 1999, appellant had been employed at the Akron Beacon Journal for approximately one year and six months. The article in question was published on November 1, 1998. Even a cursory examination of a calendar reveals that appellant must have received the information in question between October 1997 and November 1, 1998. Narrowing the time frame to this period presents no prejudice to any potential defendant's defense and is adequately specific to comply with Crim.R. 7(E). See *Lawrinson, supra.*

Based on the state of the record before us, and bearing in mind the necessary balancing that must take place in enforcing the so-called reporter's privilege and an ongoing criminal proceeding, it is evident that appellee is unable to establish the threshold relevancy requirement in order to pierce the veil of protection afforded appellant for his confidential information pursuant to R.C. 2739.12.

While the trial court did hold a hearing relative to the motion to quash, and, more specifically, the refusal of the reporter to answer only one question asked of him, it was not an evidentiary hearing. The record indicates that this hearing consisted solely of legal arguments and was, in fact, directed towards appellee's motion seeking to hold appellant in contempt. Not only does the court make little attempt at balancing the competing rights at stake, there is absolutely no support in the record for the trial court's conclusion that "[a]nswering the question as to the date received by this witness, Mr. Craig, does not identify his source [and] [t]he Court finds that it does not necessarily narrow the focus as to the source."

Because appellant was willing to accommodate appellee's stated purposes in asking the disputed question by stipulating to certain information, appellee's apparent recognition that the question it sought to have answered could very likely have led to appellant's source and appellant's compliance in every respect with the subpoena other than that which would involve giving up his statutory

right, we find that the trial court erred in holding appellant in contempt for failing to answer a question directed at divulging the name of appellant's confidential source.

Based upon all of the foregoing reasons, appellant's first assignment of error is sustained. Our resolution of this assignment of error renders appellant's second assignment of error moot and this court expresses no opinion as to the merits contained therein. Insofar as appellant appeared before the grand jury and complied with the terms of the subpoena *duces tecum*, appellant's third assignment of error is also rendered moot. Accordingly, the order of contempt entered by the Belmont County Court of Common Pleas is hereby reversed and, pursuant to App.R. 12(B), final judgment is granted in favor of appellant.

*Judgment reversed.*

VUKOVICH, J., concurs.

COX, P.J., concurs in judgment only and with the concurring opinion of VUKOVICH, J.

VUKOVICH, Judge, concurring.

In the landmark case of *Branzburg v. Hayes* (1972), 408 U.S. 665, 706, 92 S.Ct. 2646, 2669, 33 L.Ed.2d 626, 654, the United States Supreme Court noted:

"There is also merit in leaving state legislatures free, within First Amendment limits, to fashion their own standards in light of the conditions and problems with respect to the relations between law enforcement officials and press in their own areas. It goes without saying, of course, that we are powerless to bar state courts from responding their own way and construing their own constitutions so as to recognize a newsman's privilege, either qualified or absolute."

Section 11, Article I of the Ohio Constitution states:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed *to restrain* or abridge the liberty of speech, or of the press. * * *" (Emphasis added.)

In contrast, the First Amendment to the Constitution of the United States merely states that "Congress shall make no law * * * abridging the freedom of speech, or of the press * * *." Therefore, the Ohio Constitution adds a prohibition (*i.e.*, to restrain) not found in the United States Constitution. "Abridge" is generally defined as synonymous with diminish or curtail. "Restrain" has been defined as to prevent from doing something, to limit, restrict or

keep under control.[1] Therefore, it is submitted that the aforementioned provision of the Ohio Constitution goes beyond the federal constitutional prohibition of curtailing a free press: it also limits restrictions relative to a free press.

Moreover, the legislature in this state is the body charged with the enactment of public policy. That public policy, in regard to a press free of governmental restriction, is set forth in R.C. 2739.12, which grants an unqualified privilege. This statute in essence states that no reporter "shall be required to disclose the source of any information * * * in *any* legal proceeding, trial, or *investigation* * * *." (Emphasis added.)

In *Branzburg,* the United States Supreme Court was faced with a Kentucky shield law similar to that enacted in Ohio. As noted by the court: " 'However, that question [whether a newsman's source of information should be privileged] is not before the Court in this case. The legislature of Kentucky has settled the issue.' " *Id.,* 408 U.S. at 671, 92 S.Ct. at 2651, 33 L.Ed.2d at 633–634, fn. 6. Similarly, I believe that the legislature in Ohio has determined that the source of information is privileged and that the privilege is absolute and unqualified. Otherwise, the legislature would have enacted some limiting language in the statute.

Therefore, while I fully concur with every aspect of the opinion set forth by my colleagues in the majority, I would additionally specifically hold that the legislature, as evidenced by their wording in enacting R.C. 2739.12, has determined that the stronger language in the Ohio Constitution barring restrictions of a free press includes the unqualified privilege to refrain from disclosing a source, or any information that might reasonably lead to the disclosure of a source, in any investigation or proceeding.

I recognize that such a conclusion means that in actuality it is the subjective good faith belief of the reporter that is ultimately controlling as to whether requested information is divulged. However, the legislature, bolstered by Section 11, Article I of the Ohio Constitution, has the right to conclude that any potential abuse pales in comparison to the greater public good that is served by an unfettered press.

---

1. See, *e.g.,* Webster's Seventh New Collegiate Dictionary (1963).