# Dale Cockrell v. Middlebury College and Emory Fanning

[536 A.2d 547]

No. 86-142

Present: **Peck, J., and Barney, C.J. (Ret.), Keyser, J. (Ret.), Martin, Supr. J., and Costello, D.J. (Ret.), Specially Assigned**

Opinion Filed November 6, 1987

*Thomas Z. Carlson* of *Langrock Sperry Parker & Wool*, Burlington, for Plaintiff-Appellee.

*John M. Dinse* and *George A. Holoch, Jr.*, of *Dinse, Erdmann & Clapp*, Burlington, for Defendant-Appellant Middlebury College.

*William K. Sessions III* and *James S. Kernon* of *Sessions, Keiner & Dumont,* Middlebury, for Defendant-Appellant Fanning.

**Barney, C.J.** (Ret.), Specially Assigned. This is an interlocutory appeal seeking to reverse an order for discovery. Defendants' challenge to the order is based on a claim of evidentiary privilege. The case relates to the defendant College's denial of tenure to the plaintiff. According to the plaintiff, defendant Fanning wrongfully defamed him, and thereby induced the College to wrongfully deny him tenure and violate his contractual rights. We reverse.

The plaintiff Cockrell was an assistant professor of music at Middlebury College (Middlebury) for six academic years, from 1979 to 1985. It was in the fall of 1984 that the plaintiff was considered by the College Committee on Reappointment (Committee) for a tenured position. That Committee goes through a lengthy procedure of assessment and review, and in the course of that process, solicits written opinions from within the candidate's department, other faculty members, individuals in the candidate's discipline in other institutions, and many others. These written comments are solicited on the basis that they will remain confidential, being used only by the Committee. The defendant Fanning is a tenured member of the Middlebury faculty who participated in this process.

Since this case has not yet reached trial, the merits and any supporting evidence for the claims of wrong are not available to us. Instead, the defendants are asking this Court to make a decision establishing for Vermont a so-called "academic" privilege, not now recognized by the Vermont Rules of Evidence. V.R.E. 501(a) does provide that "[t]his rule shall not be construed to prevent the development at common law of other privileges."

A number of jurisdictions do recognize this sort of privilege. As is true of any such restraint on the use of evidence, a strain exists between exclusion and the liberal right to discovery. V.R.C.P. 26 through 37 provide for very broad evidentiary exploration, which even overrides contentions of admissibility. See, e.g., V.R.C.P. 26(b)(1). However, once grounds for limitation have been established, relief from what may be overreaching is available through the device of a protective order as authorized by V.R.C.P. 26(c).

In this case it is the very existence of any limitation on discovery that is at issue. We do not take it to be the position of any

party that there ought to be established an absolute privilege of confidentiality in connection with the tenure evaluations. Instead, the contention is that there is a qualified privilege of confidentiality as to evaluations sought and supplied for tenure review decisions when confidentiality has been promised.

The conditional nature of the privilege, according to case law, requires it to be evaluated in each instance in light of the facts of the case being considered. *EEOC* v. *University of Notre Dame du Lac*, 715 F.2d 331, 337 n.4 (7th Cir. 1983). The ruling below in this case says, in effect, that there is no set of facts at issue here that justifies, on any basis, restraints on discovery. That may turn out to be true, but such a decision should be made in conjunction with a review of the factual circumstances. The overriding dilemma created by a conflict between a privilege and discovery is that immediate discovery may effectively render impossible appropriate protection for confidentiality before questions as to the availability of any such privilege can be examined in light of the facts of the particular case.

If the issues in a given case relate to discrimination denominated invidious for being based on race, sex or national origin, confidentiality may have to yield in some measure. *Gray* v. *Board of Higher Education*, 692 F.2d 901 (2d Cir. 1982). Other issues call for other balances, if any such privilege is to be justified by circumstances. None of that is possible on the record before us. It may be that after examination it will be decided that the Vermont common law ought not to recognize even a conditional privilege of confidentiality as part of academic freedom, but the opportunity to make that determination ought not to be destroyed by the too-early, unexamined exercise of discovery.

Part of the judicial process, if there is to be any such privilege, will be to develop procedures for its orderly exercise, with fairness to all parties. This Court has had to do just that in similar circumstances relating to First Amendment privileges and the press. See *State* v. *St. Peter*, 132 Vt. 266, 271, 315 A.2d 254, 256 (1974). The possible presence of a qualified privilege such as urged here would require that before a plaintiff can insist on his discovery rights, he is burdened with the obligation to demonstrate to the trial court the specific need for the matter sought to be discovered, its relevance, and the existence or nonexistence of other available sources for the same information.

It should also be pointed out that it is possible for parties to contract to make certain matters privileged in their relationship. The plaintiff is here seeking employment rights under a contract with the College. It may be of significance for the trial court to examine that contract with respect to its provisions relating to the tenure process in order to determine whether confidentiality is, through established custom or contract, a part of that process.

The inquiry posed by the certification in this case asks this Court to say it was error for the lower court to fail to recognize a qualified privilege protecting from disclosure the confidential deliberations of academic tenure review committees and associated documentation. We are not prepared to do so without the development of a factual record. The order of this Court will provide for the reversal of the existing discovery order, pending performance by the plaintiff of his burden to establish factually his right to discovery.

*The order granting discovery is reversed, and the cause is remanded for further proceedings not inconsistent with the views expressed in the opinion.*